UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION

| | |
|---|---|
| NATIONAL REPUBLICAN SENATORIAL COMMITTEE, *et al.*, | |
| Plaintiffs, | Civ. No. 22-639 (DRC) |
| v. | |
| FEDERAL ELECTION COMMISSION, *et al.*, | MOTION TO DISMISS OR TRANSFER |
| Defendants. | |

**DEFENDANT FEDERAL ELECTION COMMISSION'S
MOTION TO DISMISS FOR IMPROPER VENUE
OR, IN THE ALTERNATIVE, TRANSFER**

Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, defendants Federal Election Commission ("FEC" or "Commission") and the six Commissioners of the FEC, each named in their official capacity, hereby move for an order dismissing the Complaint filed by plaintiffs National Republican Senatorial Committee, National Republican Congressional Committee, James David Vance, and Steven Joseph Chabot for improper venue. Plaintiffs invoke 52 U.S.C. § 30110, which provides for special judicial review of challenges to the constitutionality of the Federal Election Campaign Act ("FECA") "in the appropriate district court of the United States[.]" The majority of the facts relevant to plaintiffs' facial constitutional challenge to FECA's coordinated expenditure limits originate in the District of Columbia, and virtually all of the parties in this case reside or at least do most of their business in that District. The two Ohio individuals included in the complaint invoke a special judicial review provision limited to voters and national party committees but explain their standing in their capacity as candidates rather than voters. Further, plaintiffs fail to justify why this District is the appropriate

laboratory for their challenge to a nationally applicable statute, rather than all the others throughout the country in which the national party committees, the principal plaintiffs in interest here, transact business. Accordingly, this is not the "appropriate district court" for this dispute, and this action should be dismissed.

In the alternative, the Commission seeks an order pursuant to 28 U.S.C. § 1404(a) transferring this action to the District Court for the District of Columbia for the convenience of parties and witnesses, and in the interests of justice. In light of the factors described above, and the fact that that District has greater familiarity with the controlling law, it is by far the best one in which to fully and efficiently evaluate plaintiffs' claims. This District has no unique connection to the matter in controversy and plaintiffs' choice of forum is accordingly entitled to little deference. A supporting memorandum and a proposed order accompany this motion.

                                              Respectfully submitted,

                                              Lisa J. Stevenson (D.C. Bar No. 457628)
                                              Acting General Counsel
                                              lstevenson@fec.gov

                                              Kevin Deeley (Mass. Bar No. #644486)
                                              Associate General Counsel
                                              kdeeley@fec.gov

                                              */s/ Harry J. Summers*
                                              Harry J. Summers (Cal. Bar No. 147929) (Trial Attorney)
                                              Assistant General Counsel
                                              hsummers@fec.gov

                                              Christopher H. Bell (D.C. Bar No. 1643526)
                                              Attorney
                                              chbell@fec.gov

                                              FEDERAL ELECTION COMMISSION
                                              1050 First Street NE
                                              Washington, D.C. 20463
January 9, 2023                               (202) 694-1650

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# CINCINNATI DIVISION

| | |
|---|---|
| NATIONAL REPUBLICAN SENATORIAL COMMITTEE, *et al.*, | )<br>)<br>) |
| Plaintiffs, | ) Civ. No. 22-639 (DRC)<br>) |
| v. | ) MEMORANDUM IN SUPPORT OF<br>) MOTION TO DISMISS OR |
| FEDERAL ELECTION COMMISSION, *et al.*, | ) TRANSFER<br>) |
| Defendants. | ) |

**DEFENDANT FEDERAL ELECTION COMMISSION'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE
OR, IN THE ALTERNATIVE, TRANSFER**

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley (Mass. Bar No. 644486)
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers (Cal. Bar No. 147929)
Assistant General Counsel
hsummers@fec.gov

Christopher H. Bell (D.C. Bar No. 1643526)
Attorney
chbell@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, D.C. 20463
January 9, 2023        (202) 694-1650

Plaintiffs bring a broad challenge to the longstanding limits on coordinated expenditures by the national party committees, like plaintiffs National Republican Senatorial Committee ("NRSC") and National Republican Congressional Committee ("NRCC"), in support of their federal candidates. Plaintiffs challenge the facial validity of those limits, which apply and are enforced nationwide. The vast majority of the facts relevant to these claims originate in the District of Columbia, where virtually all the parties in the case reside or at least do most business. Indeed, defendant Federal Election Commission ("FEC" or "Commission"), the principal plaintiffs in interest NRSC and NRCC, the office of a majority of counsel for plaintiffs, and the federal courthouse in D.C. are all located less than two miles from each other. Rather than avail themselves of that forum, which has an expertise in campaign finance law by virtue of multiple provisions of federal law, the NRSC and NRCC have included in their complaint two Ohio individuals and filed here. But they invoke a special judicial review provision limited to voters and national party committees and explain standing for the two individuals in their capacity as candidates rather than voters. And they fail to explain the rationale for choosing this district rather than all the others throughout the country in which the NRSC and NRCC transact business. The lack of particular connection to this District means that the risk of a perception of forum-shopping must be avoided, and plaintiffs' choice of forum is entitled to little deference. Moreover, since plaintiffs' complaint was filed one of the candidate-plaintiffs has declared that he does not plan to run for office again, undermining the sole apparent basis for his Article III standing to participate in this proceeding. The federal courthouse that is within walking distance of the FEC, NRSC, NRCC, and most of plaintiffs' attorneys is the appropriate venue here.

This action should be dismissed for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure or, in the alternative, transferred to the District Court for the

District of Columbia pursuant to 28 U.S.C. § 1404(a).  Plaintiffs seek to avail themselves of the special judicial review provision at 52 U.S.C. § 30110, which provides for review of certain challenges to the constitutionality of the Federal Election Campaign Act ("FECA") "in the appropriate district court of the United States[.]"  Under section 30110, several categories of plaintiffs are entitled to request that the district court certify constitutional questions to the Circuit Court of Appeals, sitting en banc, after the district court first establishes a factual record sufficient to support such review, and provided that the court determines that the proposed questions are not frivolous.  *Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 192 n.14 (1981).

Plaintiffs here claim that a Watergate-era provision of FECA that governs the conduct of political parties in federal elections, a provision which the Supreme Court upheld more than two decades ago, is unconstitutional.  But the District of Columbia is the most convenient district in which to efficiently evaluate plaintiffs' claims.  If not dismissed, this matter should be transferred for the convenience of parties and witnesses and the interests of justice.

## BACKGROUND

This complaint was filed by plaintiffs NRSC, NRCC, James David ("J.D.") Vance, and Steven Joseph Chabot on November 4, 2022, seeking declaratory and injunctive relief pursuant to the First Amendment to the United States Constitution.  Plaintiffs NRSC and NRCC are "national committee[s]" pursuant to 52 U.S.C. § 30101(14).  (Compl. ¶¶ 13-14.)  By definition, they operate in numerous states and engage in activities like get-out-the-vote on an ongoing basis.  *See* Adv. Op. 2006-36 (Green Senatorial Campaign Committee) at 4 (Feb. 9, 2007), https://www.fec.gov/files/legal/aos/60350.pdf.  They serve as the Republican Party's senatorial campaign committee and congressional campaign committee, respectively.  (Compl. ¶¶ 13-14.)

The NRSC and the NRCC are located at 425 2nd St. N.E. and 320 First Street S.E., respectively, in Washington, D.C.

Plaintiff J.D. Vance was the 2022 Republican nominee for the U.S. Senate in Ohio, and he is currently a U.S. Senator for that state. (Compl. ¶ 15.) Plaintiff Steven Joseph Chabot was the 2022 Republican nominee for the U.S. House of Representatives from Ohio's First Congressional District, and he was the sitting U.S. Congressman in that District at that time, although he did not prevail in the general election. *Id.* ¶ 16; *see infra* pp. 11-12 & n. 3. Plaintiffs allege that "one or more Plaintiffs resides in this District," apparently referring to Chabot and Vance. (Compl. ¶ 12.)

Defendant Federal Election Commission is an independent agency of the United States government with jurisdiction over the administration, interpretation, and civil enforcement of FECA, 52 U.S.C. §§ 30101-46. *See generally* 52 U.S.C. §§ 30106(b)(1), 30107(a), 30109. Congress provided for the Commission to "prepare written rules for the conduct of its activities," 52 U.S.C. § 30106(e), "formulate policy" under FECA, *see, e.g.*, 52 U.S.C. § 30106(b)(1), and make rules and issue advisory opinions, 52 U.S.C. §§ 30107(a)(7), (8); *id.* §§ 30108; 30111(a)(8); *see also Buckley v. Valeo*, 424 U.S. 1, 110-11 (1976) (per curiam). The Commission is also authorized to institute investigations of possible violations of FECA, 52 U.S.C. § 30109(a)(1)-(2), and to initiate civil enforcement actions in the United States district courts, *id.* §§ 30106(b)(1), 30107(a)(6), 30107(e), 3019(a)(6). The Commission is led by six Commissioners, all of whom are named as defendants to this suit in their official capacities.[1]

---

[1] The Commission notes that the Complaint caption names Commissioner Allen Dickerson as Chair and Commissioner Dara Lindenbaum as Vice Chair. Those titles were correct at the time the Complaint was filed. Currently, Commissioner Lindenbaum serves as Chair and Commissioner Sean Cooksey serves as Vice Chair.

3

The Commission's sole office is located at 1050 First Street, N.E. in Washington, D.C.

Plaintiffs challenge the limits on expenditures that political parties may make in coordination with their federal candidates under FECA. (Compl. ¶ 2.) Under a unique provision in FECA, political parties are permitted to engage in such expenditures in excess of their otherwise applicable contribution limits, despite the fact that such expenditures are considered in-kind contributions to the candidate. 52 U.S.C. § 30116(d); 11 C.F.R. § 109.37. Under the current inflation-adjusted limits, parties may make coordinated expenditures with their general election candidates up to an amount ranging from $55,000 to $109,900 in races for the U.S. House of Representatives, and from $109,900 to $3,348,500 in U.S. Senate races. *Id.*; 11 C.F.R. § 109.33; *see* FEC, Coordinated Party Expenditure Limits, https://bit.ly/3DcUySP (last visited Jan. 6, 2023). Plaintiffs do not argue that these limits are unreasonably low, but rather that they are unconstitutional per se because they implicate political parties' First Amendment interests to participate in the electoral process and associate with the candidates of their choice. (Compl. ¶¶ 90-103.) Plaintiffs challenge the constitutionality of these provisions on their face (*id.* ¶¶ 90-99), and in the alternative as applied to a subset of such expenditures known as party coordinated communications, as defined in an FEC regulation, 11 C.F.R. § 109.37. (Compl. ¶¶ 100-103.)

The Supreme Court previously upheld the limits in what is now 52 U.S.C. § 30116(d) on their face, explaining that "there is no significant functional difference between a party's coordinated expenditure and a direct party contribution to the candidate." *FEC v. Colorado Republican Fed. Campaign Committee*, 533 U.S. 431, 464 (2001). Prearrangement and coordination with a candidate means that there is a "danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate." *Id.* (quoting *Buckley*, 518 U.S. at 47).

4

Plaintiffs here invoke 52 U.S.C. § 30110 (formerly codified at 2 U.S.C. § 437h). That provision provides a special procedure for certain categories of plaintiffs, including eligible voters and national party committees, to bring suits "to construe the constitutionality of any provision of [FECA]," and for the district court to certify questions of constitutionality to the court of appeals sitting en banc. This certification procedure was enacted in 1974 to provide special consideration of anticipated constitutional challenges to the extensive amendments made to FECA that year. *See* Fed. Election Campaign Act Amendments of 1974, Pub. L. No. 93-443, § 208(A), 88 Stat. at 1285-86 (1974).

Section 30110 claims are "circumscribed by the constitutional limitations on the jurisdiction of the federal courts." *Cal. Med. Ass'n*, 453 U.S. at 192 n.14. If a section 30110 claim passes that and other threshold inquiries, district courts perform three functions. First, a record for appellate review must be made, including findings of fact. *Bread Political Action Committee v. FEC*, 455 U.S. 577, 580 (1982). Second, district courts determine whether the constitutional challenges are "frivolous." *Cal. Med. Ass'n*, 453 U.S. at 192 n.14. And third, assuming any constitutional questions meet the above standards, the district court then certifies the record and all non-frivolous questions to the en banc court of appeals. *Id.*; *see* 52 U.S.C. § 30110.

## ARGUMENT

### I.    APPLICABLE STANDARDS

Under Rule 12(b)(3) a defendant may move to dismiss for improper venue. On such a motion, the plaintiff bears the burden of establishing that venue is proper. *Schmidt v. City of Lima*, Civ. No. 20-4971, 2022 WL 874923, at *2 (S.D. Ohio Mar. 24, 2022) (citing *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1046 (S.D. Ohio 2002)). The

5

plaintiff's burden at this stage is to make a prima facie showing that venue is proper. *Alter v. Schafer*, Civ. No. 16-785, 2017 WL 4168352, at *2 (S.D. Ohio Sept. 20, 2017) (citations omitted). If the Court decides that the motion to dismiss can be decided without an evidentiary hearing, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *J4 Promotions, Inc. v. Splash Dogs, LLC*, Civ. No. 08-977, 2009 WL 385611, at *25 (N.D. Ohio Feb. 13, 2009) (quoting *Centerville*, 197 F. Supp. 2d at 1046). The plaintiff must show that venue is "proper for each claim and as to each defendant in order for the court to retain the action." *Alter*, 2017 WL 4168352, at *2.

Even when venue is proper, 28 U.S.C. § 1404(a) empowers courts to transfer an action to another court "where it might have been brought" if, in the court's discretion, it finds that transfer would ultimately favor "the convenience of parties and witnesses [and] the interest of justice." The section 1404(a) analysis hinges on an "individualized, case-by-case consideration of convenience and fairness" which seeks to determine whether, based on various private and public interests, litigating the plaintiff's action in her chosen forum would be "unnecessarily burdensome." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016). For this analysis, "[t]he onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant." *Hefferan*, 828 F.3d at 498.

## II.     VENUE IS IMPROPER IN THIS DISTRICT

This case should be dismissed for improper venue because the "appropriate district court" to hear the case under section 30110 is in the District of Columbia. The parties and the evidence relevant to this constitutional challenge to a federal campaign finance statute are overwhelmingly located in that District. By contrast, the matter has little connection to this District.

6

Plaintiffs bring this action pursuant to 52 U.S.C. § 30110, which provides special procedures for limited classes of plaintiffs to bring constitutional challenges to FECA. *See supra* p. 5. For private parties, the classes of eligible plaintiffs are limited to eligible voters and national party committees. 52 U.S.C. § 30110. In addition to limiting the class of plaintiffs who may invoke those procedures, section 30110 contains the venue requirement that such actions be brought "in the *appropriate* district court of the United States[.]" *Id.* (emphasis added). This language does not mandate that all section 30110 challenges be brought in a particular court, but it does call for an independent determination as to whether this district, or some other, is in fact "the appropriate district" for this case, a constitutional challenge to a longstanding statute impacting elections nationwide.

Such discretion is particularly appropriate given the critical role that the Supreme Court has assigned to the district courts in section 30110 proceedings. Section 30110 creates a class of cases that command the attention of "the courts of appeals sitting en banc, displacing existing caseloads and calling court of appeals judges away from their normal duties." *Bread Political Action Comm.*, 455 U.S. at 580. The district court is required to ensure that there is Article III jurisdiction for a case, develop a record for appellate review by making findings of fact, and determine whether the constitutional challenges are frivolous, and only then certify the record and any nonfrivolous constitutional questions to the en banc court of appeals. *See supra* p. 5. Screening out frivolous claims reduces "the burden [the special review procedure places] on the federal courts" and prevents its "potential abuse." *Cal. Med.*, 453 U.S. at 192 nn.13-14. Given the potential for these tasks to disrupt the dockets of both the district court and the court of appeals sitting en banc, it is entirely fitting that such actions proceed only "in the appropriate district court of the United States[.]" 52 U.S.C. § 30110.

7

As for this proceeding, the District Court for the District of Columbia is "the appropriate" district to hear plaintiffs' constitutional challenge to FECA. *Id.* § 30110. As detailed *infra* pp. 10-11, virtually all parties have their sole or primary place of business in that district. The NRSC and NRCC, the two principal plaintiffs in interest, are both located in Washington, D.C. The two additional persons included in the complaint who apparently reside in this District do not even base their claim for standing on their participation as voters, the predicate for their participation in the special judicial review provision. After making pro forma references to their eligibility as voters, plaintiffs Vance and Chabot proceed to explain their interest in participating in the proposed conduct at issue as candidates, not voters. (Compl. ¶¶ 15-16.) In addition, plaintiffs fail to offer any reason why this District has more significance to the issues the NRSC and NRCC seek to litigate than all the other many districts throughout the country in which they routinely transact business. When all the principal parties to the dispute are located in another district, two plaintiffs have questionable claims to participation in the special review provision they invoke, and plaintiffs fail to explain their decision not to file this suit in an obviously preferable alternative district, courts should find plaintiffs' selected venue inappropriate.[2]

---

[2] Plaintiffs rely not only on section 30110 for venue, but also on 28 U.S.C. § 1391(e). (Compl. ¶ 12.) Venue under the latter provision has been admitted and accepted by some courts in previous section 30110 cases. *E.g.*, *Holmes v. FEC*, 99 F. Supp. 3d 123, 138 (D.D.C. 2015), *aff'd in part, rev'd in part, and remanded* 823 F.3d 69 (D.C. Cir. 2016). There do not, however, appear to have been troubling venue assertions in past cases that required careful analysis and contested rulings by courts.

28 U.S.C. § 1391(e) is the default provision governing venue for civil actions against federal agencies and officers but it does not apply to statutes with their own venue provisions. *See* 28 U.S.C. § 1391(e) ("except as otherwise provided by law"); *see also id.* § 1391(a) (same). Section 30110's venue provision thus governs. *See, e.g.*, *Bolar v. Frank*, 938 F.2d 377, 378 (2d Cir. 1991) (Section 1391 inapplicable to Rehabilitation Act claims); *Johnson v. Payless Drug Stores Nw., Inc.*, 950 F.2d 586, 587 (9th Cir. 1991) (same); *Switkes v. Laird*, 316 F. Supp. 358, 362 (S.D.N.Y. 1970) (habeus corpus); *Johnson v. Gen. Dynamics Info. Tech., Inc.*, 675 F. Supp. 2d 236, 240 (D.N.H. 2009) (Uniformed Services Employment and Reemployment Rights Act).

The district court's mandatory fact-finding exercise, prior to certification to the en banc court of appeals, illustrates why the District of Columbia is the appropriate venue. Plaintiffs have made a facial challenge to FECA's party coordinated spending limits, which apply nationwide. Much of the evidence necessary to resolve that challenge will be sought by the D.C.-based FEC from the D.C.-based NRSC and NRCC, who coordinate the party's efforts on behalf of its candidates for 33 Senate and 435 congressional seats on a biannual basis. To the extent witnesses are required to testify or provide evidence, many would be found in Washington D.C., where Congress is located and all sitting Senators and Members of Congress are regularly found. It would appear to make little sense for a forum hundreds of miles away to superintend discovery disputes in such a case.

In light of the foregoing, this Court should dismiss this proceeding pursuant to Rule 12(b)(3), or at a minimum, transfer it to the District Court for the District of Columbia, as discussed below. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

### III. IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THIS MATTER TO THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Even if this Court finds that venue is proper in this District, it should nonetheless exercise its discretion to transfer this action to the District Court for the District of Columbia for "the convenience of parties and witnesses [and in] the interest of justice." 28 U.S.C. § 1404(a). The factors in that analysis weigh heavily in favor of a transfer to that District, the focus of relevant evidence where virtually all parties reside or at least do most of their business, in a case challenging the facial validity of a federal statute that applies nationwide. And plaintiffs' choice of this District is entitled to little deference where "the vast majority of operative facts giving rise

to the lawsuit took place outside of Ohio." *U.S. ex rel. Kairos Scientia, Inc. v. Zinsser Co.*, Civ. No. 10-383, 2011 WL 127852, at *2 (N.D. Ohio Jan.14, 2011).

When evaluating a motion to transfer, the court weighs the private interests of the parties as well as public-interest concerns. *See Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). Private interests include the convenience of potential witnesses, "the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling [witnesses], the cost of obtaining attendance of willing witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Robinson v. Chertoff*, Civ. No. 06-329, 2007 WL 708616, at *2 (S.D. Ohio Mar. 2, 2007) (quoting *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002)). Public-interest concerns include "systemic integrity and fairness." *Moses*, 929 F.2d at 1137. Pertinent interests also include concerns about "docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding a trial in a community where the public affected live, and the familiarity of the court with the controlling law." *Robinson*, 2007 WL 708616, at *2 (quoting *Jamhour*, 211 F. Supp. 2d at 945). Finally, "[i]t is well established that the decision whether to transfer venue is vested in the sound discretion of the trial court." *EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, Civ. No. 18-2155, 2019 WL 1255205, at *6 (N.D. Ohio Mar. 19, 2019) (quoting *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F. Supp. 1316 (S.D. Ohio 1991)).

Here the private interests of the parties weigh heavily in favor of transfer to the District of Columbia. Virtually every party in this matter resides in or at least does business in Washington, D.C. The Commission has its sole office in the District, where the Commission administratively enforces the laws plaintiffs challenge. *See* 52 U.S.C. §§ 30106(e), 30109. It is thus also the

10

principal place of business of defense counsel. Both plaintiffs NRSC and the NRCC have their principal place of business in Washington, D.C. (Compl. ¶¶ 13-14.) Seven of the eight attorneys on plaintiffs' complaint likewise have their offices in D.C.

More specifically, defendant Federal Election Commission, the principal plaintiffs in interest NRSC and NRCC, the office of the majority of counsel for plaintiffs, and the federal courthouse in D.C. are all located less than two miles from each other. Indeed, since the federal courthouse is within walking distance of the FEC, NRSC, NRCC, and the office for most of plaintiffs' counsel, there may be no need to use other means of transport for court appearances.

While plaintiff J.D. Vance may maintain a residence in this district, following his 2022 Senate campaign his principal place of business with regular in-person requirements will be in Washington, D.C. for the next six years. He thus would not be inconvenienced by this transfer of venue.

Plaintiff Steve Chabot did not prevail in his 2022 campaign, and thereafter he announced that he would retire and not run for public office again.[3] The effect is that he lacks standing as a candidate because any purported injury cannot be redressed and, even if he could satisfy the requirements for standing, his claims are now moot. *E.g.*, *La Botz v. FEC*, 61 F. Supp. 3d 21 (D.D.C. 2014) (finding a lack of jurisdiction for former candidate for Senate in Ohio who could no longer run for office there to challenge sponsorship of televised debates by consortium of newspapers in Ohio); *see also Nader v. FEC*, 725 F.3d 226, 229 (D.C. Cir. 2013) (finding

---

[3] *See, e.g.*, Taylor Popielarz, *Spectrum News 1*, "Rep. Steve Chabot reflects on 26 years in Congress," available at https://spectrumnews1.com/oh/columbus/politics/2022/12/05/steve-chabot-reflects-26-years-congress (last visited Jan. 7, 2023) ("I have no intention on running again. I plan on retiring."). (*Compare* Compl. ¶ 45 ("At this time, in addition to his 2022 candidacy, Candidate Chabot intends to run for federal office again in the future. He wants to engage in core First Amendment activities in excess of FECA's coordinated party expenditure limits, including those under 52 U.S.C. § 30116(d), when he does so.").)

candidate's allegation that he "may" run for office again insufficient to constitute the actual or imminent injury required for standing) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992)). Without apparent standing to remain in the case, plaintiff Chabot's situation should not be part of the Court's venue analysis.

Thus every party with a live claim, and their counsel, could conveniently litigate in the District of Columbia. Indeed, with respect to the convenience of the parties and the availability of evidence, it is not clear that there is any advantage to litigating in the Southern District of Ohio.

The public's interest in the fair administration of justice also weighs heavily in favor of transfer. Proceeding with this matter in this District would "burden" a jurisdiction with no unique relationship to the cause of action. *Robinson*, 2007 WL 708616, at *2. Indeed, because the "public affected" by the challenged laws is distributed evenly in the various jurisdictions nationwide where federal candidates compete in a given election cycle, no district has any claim to unique local concerns in that regard. *Id.* On the other hand, judges in the District of Columbia are uniquely qualified to consider constitutional challenges to broadly applicable federal legislation. *See Dearth v. Gonzales*, No. 2:06-CV-1012, 2007 WL 1100426, at *4 (S.D. Ohio Apr. 10, 2007) (where "[p]laintiffs are challenging the constitutionality of federal legislation[,]" the District of Columbia "would appear to be an obvious choice.") (quoting *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 462 (S.D. Tex. 1996)).

Furthermore, because this District has no unique connection to the matter in controversy, plaintiffs' choice of forum is entitled to little deference. The laws plaintiffs challenge impact all states, parties and candidates equally, and on a national basis. Plaintiffs do not allege that Senator Vance, former Congressman Chabot, or any other persons in this District suffer unique

harm from the laws challenged here. Plaintiffs NRSC and NRCC support congressional candidates nationwide on a biannual basis, but they, like all the defendants, operate from the District of Columbia. Rather than bring this challenge there, plaintiffs elected to bring it in a district some 500 miles away. While a plaintiff's choice of forum is generally entitled to deference, such deference need not apply where the forum "has no connection with the matter in controversy." *Tech-Sonic, Inc. v. Sonics & Materials, Inc.*, Civ. No. 12-263, 2012 WL 4343103, at *2 (S.D. Ohio Sept. 21, 2012) (quoting *St. Joseph Solutions, LLC v. Microtek Medal, Inc.*, Civ. No. 11-388, 2011 WL 5914010, at *7 (S.D. Ohio Nov.28, 2011)); *see also U.S. ex rel. Kairos Scientia, Inc.*, 2011 WL 127852, at *2 (according less weight to plaintiff's choice of forum where "the vast majority of operative facts giving rise to the lawsuit took place outside of Ohio"); *JFE Steel Corp. v. ICI Americas, Inc.*, Civ. No. 06-2386, 2008 WL 4449080, at *1 (N.D. Ohio Sept. 30, 2008) ("Where plaintiff's choice of forum bears no relationship to the case, too much deference or weight given to that choice creates an unnecessary risk of forum shopping.").[4]

Finally, the relative "familiarity of the court with the controlling law" also militates in favor of transfer. *Robinson*, 2007 WL 708616, at *2 (quoting *Jamhour*, 211 F. Supp. 2d at 945). Federal campaign finance cases are very unusual in this District. The District Court for the District of Columbia and the D.C. Circuit Court of Appeals, on the other hand, are uniquely positioned to resolve the issues plaintiffs raise. Judges in that district are well-versed in federal

---

[4] Transferring would preempt any public concerns regarding counsel for plaintiffs filing in this Division during a time when there were only two active judges including this Court, a former partner at their firm. *See* "Judge Douglas R. Cole," Southern District of Ohio https://www.ohsd.uscourts.gov/ (last visited Jan. 8, 2023); Alex Botoman, Divisional Judge-Shopping, 49 Colum. Hum. Rts. L. Rev. 297, 327 (2018) (explaining that "divisional judge-shopping has the potential to seriously undermine public confidence in the judiciary, especially when procedures allow plaintiffs to judge-shop in politically charged cases challenging generally applicable laws, regulations, or policies").

13

campaign finance law, as four FECA judicial review provisions route cases there. FECA requires that all challenges to the Commission's enforcement proceedings take place in that district. 52 U.S.C. § 30109(8)(A) ("Any party aggrieved by an order of the Commission dismissing a complaint … may file a petition with the United States District Court for the District of Columbia."). The two provisions for review of FEC action on public financing matters require that petitions for review be filed with the D.C. Circuit. *See* 26 U.S.C. §§ 9011, 9041. In addition, Section 403 of the Bipartisan Campaign Reform Act ("BCRA"), which amended FECA, provides that actions challenging the constitutionality of any of its provisions may be filed in the District Court for the District of Columbia and heard by a three-judge court that would include one judge from the Court of Appeals. *See* BCRA § 403(a)(1), 116 Stat. 113.[5] If, as this District has previously noted, the District of Columbia "would appear to be an obvious choice" where "[p]laintiffs are challenging the constitutionality of federal legislation" generally, that is doubly true for challenges to federal campaign finance laws. *Dearth*, 2007 WL 1100426, at *4. The judges in the District of Columbia have greater familiarity with controlling law in this area.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss plaintiff's complaint for improper venue or, in the alternative, transfer this matter to the District Court for the District of Columbia.

---

[5] Section 403 was required in the initial post-enactment period, and has been optional but used routinely since. *See* BCRA § 403(a)(1), 116 Stat. 113.

14

                                                      Respectfully submitted,

| | |
|---|---|
| Lisa J. Stevenson (D.C. Bar No. 457628) | */s/ Harry J. Summers* |
| Acting General Counsel | Harry J. Summers (Cal. Bar No. 147929) |
| lstevenson@fec.gov | (Trial Attorney) |
| | Assistant General Counsel |
| Kevin Deeley (Mass. Bar No. 644486) | hsummers@fec.gov |
| Associate General Counsel | |
| kdeeley@fec.gov | COUNSEL FOR DEFENDANTS |
| | FEDERAL ELECTION COMMISSION |
| Christopher H. Bell (D.C. Bar No. 1643526) | 1050 First Street, N.E. |
| Attorney | Washington, D.C. 20463 |
| chbell@fec.gov | (202) 694-1650 |
| | |
| | January 9, 2023 |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2023, I served the foregoing pursuant to Fed. R. Civ. P. 5(b)(2)(E) on counsel of record, as a registered ECF user, through the Court's ECF system.

   */s/ Harry J. Summers*
   Harry J. Summers (Cal. Bar No. 147929)
   Assistant General Counsel
   hsummers@fec.gov