UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**NATIONAL REPUBLICAN**
**SENATORIAL COMMITTEE,** *et al.***,**

      **Plaintiffs,**

      v.

**FEDERAL ELECTION**
**COMMISSION,** *et al.***,**

      **Defendants.**

**Case No. 1:22-cv-639**
**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

The National Republican Senatorial Committee, along with the National Republican Congressional Committee, Senator J.D. Vance, and former Representative Steve Chabot, have sued the Federal Election Commission and each of its Commissioners in their official capacities (collectively "the FEC"). The FEC moved to dismiss or transfer for improper venue under Fed R. Civ. P. 12(b)(3). Because venue is proper, the Court **DENIES** the FEC's Motion to Dismiss for Improper Venue or, in the Alternative, Transfer (Doc. 10).

### BACKGROUND

**A.  The Complaint**

Plaintiffs seek to enjoin the FEC from enforcing a provision of the Federal Election Campaign Act ("FECA") which limits party committees' expenditures made in coordination with candidates—a limit that Plaintiffs argue is an unconstitutional abridgement of their First Amendment rights. (*See generally* Doc. 1). They seek judicial review under 52 U.S.C. § 30110, which provides that:

> The [Federal Election] Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc.

52 U.S.C. § 30110.

In their Complaint, Plaintiffs assert that venue is proper, both under that statute and § 1391(e)(1) of the general venue statute, which provides the venue rule when the United States, its agencies, or its officers are a defendant. (Doc. 1, #5).

**B.  The FEC's Motion**

After Plaintiffs filed their Complaint, the FEC moved to dismiss or transfer the case for improper venue. To begin, the FEC contends that by authorizing "actions in the appropriate district court," § 30110 "call[s] for an independent determination" beyond § 1391's general venue requirements. (Doc. 10, #90). And, it says, the District Court for the District of Columbia is the appropriate court here, because, "[v]irtually all parties have their sole or primary place of business in that district" and "plaintiffs fail to offer any reason why this District has more significance to the issues the NRSC and NRCC seek to litigate than all the other many districts throughout the country in which they routinely transact business." (*Id.* at #91 (citation omitted)). Taken together, these facts apparently mean that the "plaintiffs' selected venue [is] inappropriate." (*Id.*). Thus, the FEC says, "this Court should dismiss this proceeding pursuant to Rule 12(b)(3)." (*Id.* at #92).

2

In the alternative, the FEC argues that the Court should transfer the case to the D.C. District Court under the change of venue statute (Doc. 10, #82), which provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). The FEC offers several reasons for that transfer, some familiar and some new:

> Virtually every party in this matter resides in or at least does business in Washington, D.C. …
>
> While plaintiff J.D. Vance may maintain a residence in this district, following his 2022 Senate campaign his principal place of business with regular in-person requirements will be in Washington, D.C., for the next six years. …
>
> Plaintiff Steve Chabot did not prevail in his 2022 campaign, and thereafter he announced that he would retire and not run for public office again. The effect is that he lacks standing as a candidate because any purported injury cannot be redressed and, even if he could satisfy the requirements for standing, his claims are now moot. …
>
> [J]udges in the District of Columbia are uniquely qualified to consider constitutional challenges to broadly applicable federal legislation. …
>
> [B]ecause this District has no unique connection to the matter in controversy, plaintiffs' choice of forum is entitled to little deference. …
>
> Transferring would preempt any public concerns regarding counsel for plaintiffs filing in this Division during a time when there were only two active judges including this Court, a former partner at their firm.

(Doc. 10, #93–96 (footnote omitted))

C.  **The Plaintiffs' Response**

Plaintiffs opposed the FEC's motion. (Doc. 11). First, they argue that "the phrase 'the appropriate district court' [in § 30110] incorporates rather than

3

invalidates otherwise applicable venue rules." (*Id.* at #103 (emphasis omitted)). So § 1391(e) governs here. And under that statute, venue is proper. (*Id.*)

Then, they argue that the Court should not transfer the case under § 1404(a), because:

> [W]hile Senator Vance can conduct official *Senate* business in both the District of Columbia and Ohio, his *campaign* does its most important business—communicating with Ohio voters—in the latter, including in this District. …

> [T]he NRSC targeted this forum in 2022 with coordinated advertising specific to Ohio's U.S. senate race, running seven figures worth of ads predominately in four cities (Cincinnati, Cleveland, Columbus, and Dayton), three of which are in this District. The NRCC similarly spent up to the maximum amount of coordinated party expenditure authority assigned to it to communicate with voters in the First Congressional District in support of Steve Chabot's 2022 general election campaign. And both the NRSC and the NRCC intend to make similar and greater coordinated expenditures on campaign speech in this District, and throughout Ohio, in the future. …

> [E]ven if "some" of the relevant events here "played out in" Washington, D.C., the burdened political speech at the heart of this case has "a substantial connection to Ohio." …

> [T]he D.C. District Court is a far less convenient forum *for Plaintiffs* for the simple reason that its current docket congestion threatens a slower resolution of this case than in this Court. …

> [The FEC] does not claim that litigating this case here would result in any meaningful burden. …

> "'[A]ll federal courts are presumed to be equally familiar with federal law.'"

(*Id.* at #109–115 (citations omitted) (emphasis original)).

### D. The FEC's Reply

The FEC replied in support of their motion. (Doc. 15). It reiterated that § 30110 "entails an independent determination as to which district is 'the appropriate' one"

4

beyond § 1391's general venue requirements. (*Id.* at #130–33). And it offered both familiar and new points in rebutting Plaintiffs' response:

> Because this litigation has only an incidental relationship to this District, plaintiffs' choice of forum is entitled to little deference. …
>
> District of Columbia is the most convenient forum for resolving this action. …
>
> Statistics compiled by the Administrative Office of the U.S. Courts … show considerably greater docket congestion in this District [compared to D.C.]. …
>
> Courts in this District have specifically noted the appropriateness of making transfers due to other jurisdictions having greater "familiarity" with "the controlling law." …
>
> [This] challenge in this Division with a smaller number of judges in active service is the sort of filing that has raised judge-shopping concerns. …

(*Id.* at #134–42). With the motion fully briefed, it is now ripe for review.

## LEGAL STANDARD

The legal standard that applies in this Circuit regarding challenges to venue is a bit murky about the burden of proof, but generally clear otherwise:

> "There is a split of authority among district courts in the Sixth Circuit regarding who bears the burden of proof when venue is challenged as improper." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014). Nevertheless, "[r]egardless of who bears the burden of proof, under Rule 12(b)(3), a plaintiff's well-pled allegations pertaining to venue issue[s] are taken as true, unless contradicted by a defendant's affidavits." *Id.* Moreover, "[i]n resolving venue questions, courts 'may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff.'" *Id.* (quoting *Audi AG & Volkswagen of Am. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002)).

5

*Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, 586 F. Supp. 3d 759, 775 (S.D. Ohio 2022).[1]

The legal standard for considering discretionary transfer under 28 U.S.C. § 1404 is somewhat clearer:

> [A] standard § 1404(a) analysis hinges on an "individualized, case-by-case consideration of convenience and fairness" which seeks to determine whether, based on various private and public interests, litigating the plaintiff's action in her chosen forum would be "unnecessarily burdensome." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016). Throughout the analysis, "the onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant." *See Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 876 (M.D. Tenn. 2019) (quoting *Hefferan*, 828 F.3d at 498). "Unless the balance is strongly in favor of defendant, a plaintiff's choice of forum should rarely be disturbed." *Id.* (citing *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009)).

*Id.*

## LAW AND ANALYSIS

**A.  Venue is proper.**

"When venue is challenged, the court must determine whether the case falls within [§ 1391]. If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013).[2] Section 1391(e)(1) provides that:

---

[1] While *Olin-Marquez* applies this standard in the context of improper venue under 28 U.S.C. §§ 1406(a) and 1631, *Reilly* applies it in the § 1391 context, which is what the Court faces here.

[2] This case refers to § 1391(b), but there is no reason to think the same principles do not apply to § 1391(e).

6

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, *except as otherwise provided by law*, be brought in any judicial district in which
>
> > (A) a defendant in the action resides,
> >
> > (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
> >
> > (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1) (emphasis added). Here, no one disputes that this case meets § 1391(e)(1)'s general strictures. Rather, the FEC focuses on the "except as otherwise provided by law" provision, and it argues that § 30110 is one such exception. In sum, the FEC claims that § 30110 essentially displaces § 1391 for claims like the one here. The Court disagrees and thus concludes venue is proper.

### 1. This action satisfies § 1391(e)(1).

Let's start with the easy part. As Plaintiffs note, "there is no dispute" that this case satisfies § 1391(e)(1). "[T]he FEC is 'an agency of the United States,' 'no real property is involved in the action,' and two Plaintiffs 'reside[]' in this District." (Doc. 11, #103 (citing 28 U.S.C. § 1391(e)(1)(C))). And as Plaintiffs correctly point out, "§ 1391(e)'s residency requirement is satisfied as long as 'at least one plaintiff resides in the district in which the action has been brought.'" (*Id.* (quoting *Sidney Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336, 343–44 (6th Cir. 2005)). So long as no other venue statute trumps, venue is appropriate in this District.

7

### 2. § 30110 incorporates § 1391's venue requirements.

But the FEC asserts that a different provision controls the venue analysis here—§ 30110. The FEC observes that § 30110 provides that plaintiffs can bring actions like the one here "in the appropriate district court of the United States." (Doc. 10, #90). And the FEC claims that this is a different standard than the one § 1391 adopts, meaning that § 30110 "otherwise provides by law." (*Id.* at #91). The Court disagrees.

In construing the meaning of "appropriate district court" in § 30110, this Court starts with the following proposition: "it is a cardinal rule of statutory construction" that, when Congress employs a legal term of art, it "adopts the cluster of ideas that were attached" to that term in the legal profession. *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 291–92 (2012) (cleaned up) (interpreting "actual damages" according to common understanding in legal profession); *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 615–16 (2001) (Scalia, J., concurring) (interpreting "prevailing party" that same way). "Appropriate district court" is one such legal term of art. The legal profession has long understood the phrase "appropriate district court" to refer generally to those courts in which venue lies. Indeed, 28 U.S.C. § 1390 defines venue to mean "the geographic specification of the proper court or courts for the litigation of a civil action"—i.e., the appropriate district court. Courts, both before and after Congress added this language to FECA reflect that same understanding of the phrase "appropriate district court." *See, e.g., Taylor v. Love*, 415 F.2d 1118, 1119 (6th Cir. 1969) (using "the appropriate District

8

Court" to refer any court where venue is proper under 28 U.S.C. § 1406, the statute governing venue transfers).

And unless a given statute says otherwise, the "time-proven" understanding in the legal profession is that § 1391 provides the manner of determining the "appropriate district court." *Milliken & Co. v. Fed. Trade Comm'n*, 565 F. Supp. 511, 513 (D.S.C. 1983) (holding that statute which provides, among other things, that "[a]ny person receiving such notification may file with the appropriate district court or court of appeals of the United States" is not "sufficient or intended to overrule the time-proven provision of 28 U.S.C. § 1391(e) or 28 U.S.C. § 1404(a)" (footnote omitted)); *see also Illinois v. City of Milwaukee*, 406 U.S. 91, 108 & n.10 (1972) (citing 28 U.S.C. § 1391(b) and 28 U.S.C. § 1407 as the basis for determining "an appropriate district court"), *disapproved on other grounds in later proceedings sub nom. City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304 (1981) (citing 28 U.S.C. § 1391(b) and 28 U.S.C. § 1407 as the basis for determining "an appropriate district court"); *Horizon Coal Corp. v. United States*, 43 F.3d 234, 240 n.5 (6th Cir. 1994) (noting that "a finding that the United States Claims Court has exclusive jurisdiction over operator reimbursement actions would work a hardship against operators by requiring them to litigate their claims in Washington, D.C., rather than in the appropriate district court"); *NLRB v. Line*, 50 F.3d 311, 314 (5th Cir. 1995) (holding that "[v]enue is necessarily defined as the appropriate district court to file an action"). Indeed, even in the context of § 30110, some courts, including the District of Columbia courts that the FEC touts as more authoritative on FECA matters, have cited § 1391(e) when

9

determining whether venue lies. *See, e.g.*, *Holmes v. FEC*, 99 F. Supp. 3d 123, 138 (D.D.C. 2015), *aff'd in part, rev'd in part, and remanded* 823 F.3d 69 (D.C. Cir. 2016). In short, unless a statute specifically provides a different mechanism for selecting "the appropriate district court," § 1391 serves as the default rule.

The FEC argues otherwise, claiming that § 30110 adopts an alternative framework. Troublingly, though, the FEC declines to explain in any detail what that purported framework is. As best the Court can tell, the FEC's proposed framework focuses on the location of the "principal plaintiffs in interest" (with no description of what renders a given plaintiff "principal"), where the "evidence necessary to resolve [the] challenge" lies, where "expert witnesses" are likely to be found, and "where Congress is located." (Doc. 10, #91–92). Then, having suggested multiple factors, the FEC offers little insight on how these factors should be balanced, just noting that here all point to D.C. (*Id.*).

The FEC's proposed interpretation of § 30110 suffers from a few problems. To start, the FEC fails to locate the above factors anywhere in the statutory text or context. Rather, the FEC merely notes that district courts play a "critical role" in § 30110 challenges, and then suggests that this "critical role" requires a special venue analysis. (*Id.* at #90). But the FEC does little to tie the nature of that "critical role" to the venue framework it proposes.

Beyond that, in most cases under the FECA, the FEC's venue framework would point to the district court in D.C. After all, Congress is located there, the FEC contends that the relevant expert witnesses tend to cluster there, the FEC is located

10

there, and if "principal parties in interest" refers to national committees, the national committees for the two largest political parties (and the documents maintained at party headquarters, which the FEC contends is a big chunk of the necessary evidence) are also there. (Doc. 10, #92). But if the FEC is indirectly suggesting that venue under § 30110 is presumptively the district court in D.C., that runs headlong into another canon of statutory interpretation. Courts "presume differences in language [within a statute] … convey differences in meaning." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) (citing *Loughrin v. United States*, 573 U.S. 351, 359 (2014)). Here, as the FEC acknowledges, the FECA makes the district court in D.C. the exclusive forum for "challenges to the Commission's enforcement proceedings." *See* 52 U.S.C. § 30109(a)(8)(A) ("Any party aggrieved by an order of the Commission dismissing a complaint … may file a petition with the United States District Court for the District of Columbia."). When Congress wants to specify a particular venue for FECA challenges, it knows how to do so. Congress did so for one class of cases, but declined to do so for the challenge here.[3]

Comparing the venue language in § 30110 to the other statutes that the FEC cites in its briefing reinforces this result. The FEC points, for example, to the Rehabilitation Act, habeas corpus, and the Uniformed Services Employment and Reemployment Rights Act. (Doc. 10, #91, n.2). Look at each. Far from just referring to "the appropriate district court," each statute offers detailed venue instructions. The

---

[3] Moreover, 52 U.S.C. § 30110 itself notes that appeals shall go "to the United States court of appeals for the circuit involved," again implying the possibility of actions under the statute occcurring in various circuits across the country. This provides further textual support for the notion that § 1391's general venue provisions control.

11

Rehabilitation Act venue provision (which is the Title VII venue provision), for example, provides that:

> [A]n action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3). And the habeas statute limits courts in issuing writs of habeas to "their respective jurisdictions," again a different substantive standard than § 1391. 28 U.S.C. § 2241(a). Finally, the USERRA venue provision expressly limits venue to "any district in which the private employer … maintains a place of business." 38 U.S.C. § 4323(c)(2). These statutes, then, do not help the FEC. Instead, they reaffirm that when Congress wants to specify a venue framework different from § 1391, it knows how.

In short, the FECA's plain language, read in context, shows that Congress elected not to overturn the default venue rule for constitutional challenges to that statute. This Court must respect that choice. The Court thus reads "the appropriate district" in § 30110 to refer to any district that satisfies § 1391's general venue standards. Here, as noted above, all agree those are met. Thus the Court **DENIES** the FEC's Motion to Dismiss (Doc. 10).

**B.     § 1404(a) favors retaining the case.**

Even when venue is proper, defendants can seek transfer to another district court under 28 U.S.C. § 1404(a). The statute says:

12

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). In resolving motions to transfer under § 1404(a), courts consider

> the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of "interests of justice."

*Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)). In requesting such a transfer, though, a defendant confronts an uphill climb. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[4] *See Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)). Here, the factors do not "strongly favor" transfer. To the contrary, they favor this Court retaining the case.

### 1. Private interests of the parties favor retaining the case.

The private interests of the parties include

> [t]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; … and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

---

[4] The FEC, though, tries to carve an exception into this settled rule. Citing a case from the Nothern District of Ohio, the FEC says that "plaintiffs' choice of this District is entitled to little deference where 'the vast majority of operative facts giving rise to the lawsuit took place outside of Ohio.'" (Doc. 10, #92–93 (citing *U.S. ex rel. Kairos Scientia, Inc. v. Zinsser Co.*, No. 5:10-cv-383, 2011 WL 127852, at *2 (N.D. Ohio Jan. 14, 2011))). Even assuming that exception exists, a question the Court does not reach, it would not carry the day for the FEC here. That is because, as explained below, the vast majority of facts alleged here did *not* occur outside Ohio.

13

*Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002) (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947)). Beyond that, courts in this district have

> also considered additional factors when evaluating whether transfer is appropriate … includ[ing] "the nature of the suit; the place of the events involved; ... and the residences of the parties."

*Id.* at 946 (quoting *Sky Techs. Partners, LLC v. Midwest Rsch. Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000), and citing *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991), and *Shapiro v. Merrill Lynch & Co.*, 634 F. Supp. 587, 589 (S.D. Ohio 1986)).

Some of the first factors are not that relevant. Given that this looks to be a law-heavy rather than fact-heavy case, any advantage D.C. might have over this Court regarding witnesses and evidence seems minimal at best. And as for the lawyers—"convenience of counsel is not a factor to be considered when ruling on [a] motion for transfer." *Tanyike v. United States*, 603 F. Supp. 3d 572, 583 (S.D. Ohio 2022) (internal quotation marks omitted) (citing *Sanhua Int'l, Inc. v. Riggle*, No. 2:17-cv-368, 2019 WL 2088431, at *6 (S.D. Ohio May 13, 2019)).

And factors like "the nature of the suit; the place of the events involved; ... and the residences of the parties" all favor retaining the case. The relevant facts alleged here concern Ohio. Two of the plaintiffs live here and campaigned here—as a result, much of the alleged censorship at issue (if it is fairly called "censorship") occurred here. (Doc. 11, #108–10). Thus any First Amendment chilling, again if such chilling occurred, likewise happened here.

14

The FEC counters that this is illusory—because the national parties are affected elsewhere by this statute and because they seek nationwide remedies, the vast majority of operative facts, the FEC says, occurred outside Ohio. (*See* Doc. 15, #134–35). But Senator Vance and (former) Representative Chabot are plaintiffs too. The censorship (again, if it is censorship) affected them both as well, and almost exclusively in their home districts. Even if the FEC thinks they've been joined as "pro forma plaintiffs," the Court still has an obligation to take their interests seriously.

### 2. Public-interest concerns favor retaining the case.

Public-interest concerns include

> [d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law.

*Jamhour*, 211 F. Supp. 2d at 945 (quoting *Gulf Oil*, 330 U.S. at 508). That last factor can be put more precisely as "the appropriateness of having diversity cases tried in a forum which is familiar with the governing law." *Sirak v. J.P. Morgan Chase & Co.*, No. 5:08-cv-169, 2008 WL 4845950, at *2 (N.D. Ohio Nov. 5, 2008) (citing *Gulf Oil*, 330 U.S. at 508).

To start, as explained above, this District has a relation to the cause of action. And any alleged "censorship" affected the public that Vance and Chabot were trying to reach, many of whom live in this District.

Next, the FEC argues that the D.C. District Court has greater familiarity with the controlling law than this Court. (Doc. 10, #96). Not so. In an "action aris[ing] under … a federal statute, both courts are equally familiar with the controlling law

15

and each would be competent to adjudicate that claim." *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 857 (S.D. Ohio 2007). And in any event, as noted above, the controlling law factor typically applies in *diversity* jurisdiction cases and generally refers to a federal trial court's familiarity with applicable *state* law. *See Sirak*, 2008 WL 4845950, at *2; *One Ethanol, LLC v. BOX BioScience, LLC*, No. 1:21-cv-874, 2022 WL 16636449, at *7 (W.D. Mich. Aug. 22, 2022); *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877 (M.D. Tenn. 2019). So this does not favor transfer.

Third, the FEC says that the Court has recognized, "'where '[p]laintiffs are challenging the constitutionality of federal legislation[,]' the District of Columbia 'would appear to be an obvious choice.'" (Doc. 10, #97 (citing *Dearth v. Gonzales*, No. 2:06-cv-1012, 2007 WL 1100426, at *5 (S.D. Ohio Apr. 10, 2007))). That over-reads *Dearth*. Here is what the Court actually said:

> Even if the Court is mistaken in this regard, dismissal is still warranted. Defendants have requested, alternatively, that the Court transfer this action to the District Court of the District of Columbia. The Court recognizes that venue as to Defendant Gonzales would be proper in the District of Columbia because the Attorney General resides in that judicial district for venue purposes. The District of Columbia would also serve as a proper venue under § 1391(e)(2) because Plaintiffs are challenging the constitutionality of federal legislation and the District of Columbia would appear to be an obvious choice. The District of Minnesota would arguably also serve as an appropriate venue under § 1391(e)(2) because Plaintiff Dearth alleges that he attempted to purchase a firearm at a sporting good store located in Minnesota. Setting aside speculative issues of potential forum shopping by both sides, the interests of justice dictate that either forum would serve as a more proper and convenient forum than the Southern District of Ohio.

*Dearth*, 2007 WL 1100426, at *5 (citations and internal quotation marks omitted).

16

There is a gulf between FEC's reading of *Dearth* and the real *Dearth*. The court there held that the Southern District of Ohio was not a proper venue either under § 1391(e)(1)(A) or (B). *Id.* at *2–5. After explaining why, the court justified the outcome (denying venue) by turning to the motion for transfer. The court noted that the proposed alternatives, unlike the Southern District, had proper venue—D.C. had proper venue because "the Attorney General resides" there and "Plaintiffs are challenging the constitutionality of federal legislation." *Id.* at *5. Minnesota "arguably" had proper venue because the plaintiff "attempted to purchase a firearm at a sporting good store located in Minnesota." *Id.* For those reasons "either forum would serve as a more proper and convenient forum than the Southern District of Ohio." *Id.* Nowhere did the court say that D.C. is *the superior* choice to any other forum when a court faces a constitutional challenge—merely that it was one of at least two good options in *Dearth*. And because venue was not proper in *Dearth*, the court wanted to find other choices where venue *did* appropriately lie.

Here, venue is proper under § 1391(e)(1)(C). No authority states that, despite venue being proper in this district, this Court should transfer the case to D.C. just because it involves a constitutional challenge. Indeed, if the Court were to do so, it would violate a basic rule to the contrary—that all federal courts are considered equally familiar with federal law. *Kay*, 494 F. Supp. 2d at 857.

Grasping at straws, the FEC also suggests that the public might think the Court partial to Plaintiffs because the Court was formerly a partner at the law firm representing them. (Doc. 10, #96 n.4). That does not fly. (*See* Doc. 11, #108 n.3

17

("[Federal law] requir[es] disqualification of a judge who, while 'in private practice,' 'served as lawyer *in the matter in controversy*, or a lawyer with whom he previously practiced law served *during such association* as a lawyer *concerning the matter*.'") (emphases original) (citing 28 U.S.C. § 455(b)(2)))). The Court was last a partner at the firm at issue some twelve years ago. Indeed, of the eight counsel listed on the docket, it appears only two were even at the firm during the undersigned's tenure there. While the Court knows some of Plaintiffs' counsel, the same could be said for many cases on this Court's (and likely most courts') docket. And importantly, the undersigned never worked with any of these counsel "concerning this matter," or on anything relating to this matter. Given these facts, no reasonable person could conclude the Court is partial to either party. In any event, the Court plays a minor role in this case—managing the discovery process, making findings of fact, and certifying "all questions of constitutionality" for review by the en banc Sixth Circuit. *See* 52 U.S.C. § 30110.

Finally, the parties debate the docket congestion factor. Plaintiffs say it favors this Court, because D.C. has so many cases. (Doc. 11, #111–12). The FEC says this Court is even more congested. (Doc. 15, #139–141). The Court agrees with the FEC here—the Administrative Office's data suggests that the Southern District is more congested than D.C. But this factor alone cannot outweigh a plaintiff's choice of forum—after all "unless the balance is *strongly* in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese*, 574 F.3d at 320 (emphasis added). So the Court **DENIES** the FEC's Motion to Transfer (Doc. 10).

18

## CONCLUSION

For the above reasons, the Court **DENIES** the FEC's Motion to Dismiss for Improper Venue or, in the Alternative, Transfer (Doc. 10).

**SO ORDERED.**

May 9, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**